**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**DELTA DIVISION**

**RONALD DALE RICHARDSON,**                                     **PLAINTIFF,**

**VS.**                                     **CIVIL ACTION NO. 2:03CV372-P-A**

**NEW CENTURY MORTGAGE CORPORATION,**
**BARRY HUNT d/b/a UNITED MORTGAGE**
**DESOTO, and EQUITY TITLE & ESCROW**
**COMPANY OF MEMPHIS, LLC,**                                     **DEFENDANTS.**

<u>**MEMORANDUM OPINION**</u>

These matters come before the court upon New Century Mortgage Corporation's Motion

for Summary Judgment [42-1], Equity Title & Escrow Company of Memphis, LLC's Motion for

Summary Judgment [39-1], and Barry Hunt d/b/a United Mortgage DeSoto's Motion for

Summary Judgment [44-1]. Upon due consideration of the motion, the plaintiff's combined

response, and the reply filed by New Century Mortgage Corporation thereto, the court is prepared

to rule.

**I. FACTUAL BACKGROUND**

<u>**A. Introduction**</u>

On October 13, 2003 the plaintiff filed the instant action against New Century Mortgage

Corporation, Equity Title & Escrow Company of Memphis, LLC, and Barry Hunt d/b/a United

Mortgage DeSoto in the Circuit Court of DeSoto County. On the basis of federal question and

bankruptcy jurisdiction, the defendants removed to federal court. The plaintiff filed no motion to

remand.

In 1999, the plaintiff pledge his homestead property in Blue Mountain, Mississippi as

1

collateral to Citifinancial to secure a $46,999.72 loan at 10% for 120 months. In 2002, with seven years left on this first loan, the plaintiff sought to refinance the existing mortgage. He contacted Defendant Barry Hunt, a licensed Mississippi mortgage broker in Southaven, Mississippi to obtain a favorable mortgage.

Hunt contacted lender New Century Mortgage Corporation which offered a loan of $60,000.00 at a fixed interest rate of 10.5% for 30 years. According to the plaintiff, the understanding was that following the payoff of his existing mortgage at Citifinancial for $41, 467.56 and settlement charges of $7, 135.79, the plaintiff was to receive $11,396 in cash at the closing.

The plaintiff accepted the terms and the loan was scheduled to close on November 25, 2002 at the office of Defendant Equity Title and Escrow Company of Memphis, LLC. On that date, the plaintiff was presented with numerous loan documents including a deed of trust, promissory note, and a HUD-1 settlement statement – all of which he executed. The HUD-1 statement provided that he should receive $11,396 in cash following his three-day right of rescission and that his mortgage at Citifinancial would be paid in full.

Richardson avers that the defendants told him he should return to the closing office of Equity Title on December 2, 2002 to pick up his check. When he did so, he was told he would have to wait before receiving it.

On January 2, 2003, Richardson received a notice of delinquency from Citifinancial, the holders of the first mortgage, informing him that his mortgage payments were past due for December 2002 and January 2003 and that therefore a foreclosure would soon commence. He received a second notice on February 6, 2003.

On January 31, 2003, Richardson's first mortgage at Citifinancial was paid in full and its deed of trust was released on February 17, 2003. Richardson then began receiving foreclosure notices from New Century Mortgage, his new mortgagee, given that he had not made his first payment due on January 2, 2003. Because Richardson never received the check for $11,396 he believed he was due from the defendants, he was unable to make his mortgage payments. He then filed a bankruptcy petition under Chapter 7 to prevent foreclosure of his home.

The plaintiff filed the present case against the lender (New Century Mortgage), the broker (Hunt), and the escrow agent (Equity Title) arguing eight causes of action: (1) violations of the Truth in Lending Act; (2) fraud; (3) civil conspiracy; (4) breach of fiduciary duty; (5) violations of Mississippi Consumer Mortgage Protection Act; (6) violations of the Mississippi Consumer Loan Broker Act; (7) breach of the duty of good faith and fair dealing; and (8) violations of the Real Estate Settlement Procedures Act. In addition to seeking compensatory and punitive damages, the plaintiff seeks a rescission of the loan transaction, a termination of New Century Mortgage's security interest, a declaration that the transaction is void, and a return of any property given to anyone in connection with the transaction.

In the complaint, all eight causes of action are levied against all three defendants.

First, the plaintiff alleges that the defendants violated the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, because he was never provided with a settlement statement accurately reflecting that the $11,396 was to go to the IRS in satisfaction of its tax lien on his property, because the defendants failed to provide proper disclosures, failed to make timely disclosure of the yield spread to the broker, failed to make the terms clear and conspicuous, failed to disclose certain finance charges, and failed to provide three business days to rescind the loan.

Second and third, the defendants are liable for fraud and conspiracy to commit fraud because even though they were aware of the federal tax lien and that it was required to be satisfied as part of the closing, the defendants misrepresented to him that he would receive the $11,396 in cash to "coerce" him to complete the loan. Consequently, Richardson writes, "[h]e traded a loan balance of [approximately] $41,000 for a loan balance of $60,000.00 without receiving any benefit."

Fourth, the defendants, because they had a fiduciary duty to the plaintiff to disburse the loan proceeds according to the HUD-1 statement, the defendants breached that duty by paying the IRS the $11, 396.65 rather than paying it to Richardson.

Fifth, the defendants violated the Mississippi Consumer Protection Act, Miss. Code Ann. § 81-18-1 *et seq.* by misrepresenting or concealing material facts intended to persuade the plaintiff to agree to the loan, engaging in bad faith practices, engaging in fraudulent residential mortgage practices, and violating the limitations of the amount of finance charges that may be assessed.

Sixth, the defendants violated the Mississippi Consumer Loan Broker Act, Miss. Code Ann. § 81-19-1 *et seq.* by charging fees in excess of allowable amount, using misleading statements regarding the services provided concerning the terms and conditions of the loan obtained, making false statements or concealing material information to induce use of the broker's services, and concealing material facts regarding the broker's services on the subject transaction.

Seventh, the defendants breached their duty of good faith and fair dealing by engaging in fraudulent residential mortgage underwriting practices and by defrauding the plaintiff with the

making of the mortgage loan.

Eight, the defendants violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* and Regulation "X" implementing RESPA, 24 C.F.R. § 3500 *et seq.* by failing to provide the plaintiff a good faith estimate of the amount or range of settlement charges at closing, failing to provide a settlement statement that conspicuously and clearly itemized all charges imposed on the borrower, and charging excessive fees.

All three defendants filed the instant motions for summary judgment, arguing that there is no genuine issue of material fact warranting a trial on any of the plaintiff's claims because of the lack of evidence to support at least one required element for each cause of action. Much of their arguments for summary judgment centers around the fact that there was a federal tax lien for approximately $19,000 placed against Richardson's real property in 1993 – a fact that Richardson, Hunt, and Equity Title knew but it is undisputed that New Century did not. Rather than giving Richardson a check for the $11,396, which the HUD-1 indicated was due him, the money was given to the IRS to satisfy the $19,000 lien in order to give New Century its required title priority.

Essentially, Hunt and Equity Title argue that the reason the HUD-1 statement indicated that the $11,396 was to go to Richardson, while not mentioning the tax lien, was that Richardson informed them that the lien would be taken care of before the closing. Indeed, Richardson admits knowing that Equity Title did not disclose the tax lien to New Century because New Century would not have issued him the loan. Since the lien was not satisfied before closing or during the three-day rescission period, Equity Title as the escrow agent was duty bound to pay the lien. Hunt and Equity Title argue further that although Richardson did not receive the cash, he

received the benefit of the $11,396 since he owed that money to the IRS.

The specifics of each defendant's summary judgment arguments follows.

## B. New Century Mortgage

New Century argues first and foremost that contrary to Richardson's assertions, neither Equity Title the escrow agent nor Hunt the broker is an agent of New Century thereby conferring vicarious liability upon New Century for any actions or inactions by them. Rather, New Century avers that while Equity Title has closed loans for New Century in the past, there is no exclusive relationship between them. In this case, Equity Title was solicited by Hunt to close the plaintiff's loan. There was no ongoing or established relationship between New Century or Equity Title. With regard to Hunt, New Century asserts that Hunt was an independent broker and was hired by the plaintiff. It is undisputed that the broker agreement specifically provides that "[n]othing contained in this Agreement shall be deemed to create, nor shall this Agreement be construed so as to create a joint venture, partnership, agency or employment relationship between New Century and Broker." In any event, New Century argues that the plaintiff has produced no evidence to meet its burden in proving an agency relationship between New Century and Hunt or Equity Title.

Apparently, the plaintiff does not dispute that Hunt is not an agent of New Century. Regarding Equity Title, Richardson argues that the evidence is clear that Equity Title was the agent of New Century because Pamela White, an employee of Equity Title, testified twice in her deposition that New Century was Equity Title's client, saying "That's our priority client. That's who we represent." New Century rebuts this by pointing out that White also referred to Richardson as Equity Title's client on at least fourteen occasions. Furthermore, outside of

receiving the standard closing instructions and package, there was little, if any, communication between New Century and Equity Title. Although New Century completely denies any agency relationship with Equity Title, it argues that White's reference to Richardson as a client in addition to New Century establishes an issue of dual agency – *i.e.*, Equity Title as agent of both Richardson and New Century. According to Mississippi law, New Century posits, the general rule that knowledge obtained by an agent is imputed to the principal changes when the agent represents more than one principal. In *Lane v. Oustalet*, 873 So.2d 92, 95-97 (Miss. 2004), the Mississippi Supreme Court ruled that it could not establish a bright line rule that knowledge of an agent is automatically imputed to a principal from an agent in a situation involving dual agency without proof of actual knowledge. New Century asserts that the plaintiff has provided no evidence that New Century had any knowledge of the tax lien.

Accordingly, since it is undisputed that Richardson never communicated directly with New Century, nor did New Century have any knowledge of the tax lien, New Century argues that Richardson cannot establish a claim against it for fraud, conspiracy, breach of fiduciary duty, and breach of the duty of good faith and fair dealing.

In any event, New Century stresses that it cannot be held liable for fraud because it never actually made any statement, fraudulent or otherwise, to the plaintiff. New Century adds that there was no fiduciary duty between it and the plaintiff to breach citing several Mississippi cases, including *Strong v. First Family Financial Services, Inc.*, 202 F.Supp.2d 536, 541 (S.D. Miss. 2002) ("the Mississippi Supreme Court has repeatedly held that lenders and their borrowers typically are not in a fiduciary relationship and certainly are not so as a matter of law."). Rather, the transaction between the plaintiff and New Century was merely a typical residential loan

transaction. With regard to the implied warranty of good faith and fair dealing claim, the plaintiff cannot establish such a claim because he explicitly granted New Century a security interest in the property and also assumed the contractual obligation to "promptly discharge any lien which has priority" over the deed of trust. What is more, the plaintiff proffers no evidence of any "conscious wrongdoing" by New Century.

According to New Century, the plaintiff cannot establish claims under the Truth in Lending Act, the Mississippi Consumer Mortgage Protection Act, the Mississippi Consumer Loan Broker Act, and RESPA. In his response, the plaintiff concedes that New Century cannot be liable under the Mississippi Consumer Mortgage Protection Act and the Mississippi Consumer Loan Broker Act, thus leaving claims under the TILA and RESPA. New Century argues that it complied with each statute as it applied to New Century.

With regard to the alleged Truth in Lending Act violation, the plaintiff admits that a copy of the settlement statement was provided to him and that the only thing missing from it was the federal tax lien. The plaintiff also concedes that New Century had no knowledge of the tax lien. New Century argues that it is not liable for any mistaken charges that may have occurred. It concedes there was a clerical error on the HUD-1 under the section titled "Government Recording and Transfer Charges," which mentioned the charges applicable to property located in Shelby County, Tennessee when it should have been the rate charged to Tippah County, Mississippi. However, New Century responds that this was the error of Equity Title and that in any event, the error falls into the bona fide error exception in the Truth in Lending Act, 15 U.S.C. § 1640(c). The plaintiff's response does not dispute this.

New Century points out that the two primary arguments regarding its alleged violations of

the TILA were diverting of the $11,396 to the IRS and the payment of a $1700 fee to "Unicorp Marketing." The first argument fails, New Century argues, because it is undisputed that it had no knowledge of the tax lien and as far as it knew, the plaintiff received the money. The second argument fails because New Century had no knowledge that Hunt was the owner of Unicorp Marketing nor did it know anything about the $1700 fee until it received the revised closing statement.

Nevertheless, New Century argues that it cannot be liable under the TILA simply because the plaintiff suffered no damages given he was required to pay the tax lien and he received the benefit of the $11,396 when it was given to the IRS in satisfaction of that lien.

As to RESPA, which the plaintiff's response states is only applicable to New Century and Equity Title, New Century argues that the plaintiff only restates his Complaint with no specific violations asserted. The gist of Richardson's argument, New Century states, is that funds should not have been diverted from this closing to pay his IRS lien and that Hunt should not have charged him the $1700 fee for negotiating the subordination agreement with the IRS. New Century responds that the plaintiff was aware of the lien, he signed the HUD-1 statement which approved the $1700 to Unicorp Marketing (Hunt), and yet the plaintiff seeks to hold liable New Century which had no knowledge of either situation. The plaintiff's response only seeks liability on New Century's part under the RESPA based on his argument that Equity Title was an agent of New Century.

## C. Equity Title

The plaintiff concedes in his consolidated response to the defendants' motions for summary judgment that his claims under TILA, the Mississippi Consumer Mortgage Protection

Act, and the Mississippi Consumer Loan Broker Act do not apply to Equity Title the escrow agent. See Response, 9 and 11-12. This leaves the claims of fraud, conspiracy, breach of fiduciary duty, breach of the implied warranty of good faith and fair dealing, and violations of RESPA.

Equity Title avers that after its title search revealed the outstanding federal tax lien, Hunt informed them that Richardson would be providing proof of the release of the lien. Equity Title states further that Richardson represented to Hunt that he was in negotiations with the IRS and that the lien was either going to be released or subordinated so that the lender, New Century, would be placed in a first mortgage position ahead of the IRS. On the day of closing, the IRS release had not been provided to Equity Title. Nevertheless, Equity Title closed in escrow, pending proof that the IRS had released or subordinated its lien.

After the closing, Richardson began calling Equity Title wanting disbursement of the $11,396 but since he was unable to provide documentation that the IRS lien had been satisfied, Equity Title did not disburse the funds to Richardson. Plaintiff spoke with Pamela White at Equity Title during the three-day rescission period and told her he was working on getting the IRS release to them. Hunt also told White that Richardson was in the process of getting the release. When no proof was provided, Equity Title advised Richardson that no money could be disbursed to him until the lien was satisfied. Equity Title points out that although Richardson testified that he was never told by Equity Title the reason he could not pick up his check, he employed Hunt after the closing to help him negotiate a hardship with the IRS in order to get the release. Thus, Equity Title argues, Richardson was aware that the IRS lien was the impediment to receiving his money. Equity Title had several conversations with Richardson wherein it advised

him to rescind the closing because the $11,396 would have to be paid to the IRS. It is undisputed that Richardson had the option to rescind but insisted on closing.

Equity Title argues it was under a legal duty to pay off the lien in order to provide clear title. Plaintiff received the benefit of the $11,396 because his IRS obligation was reduced by this amount.

According to Equity Title, the plaintiff's suit essentially alleges that the defendants fraudulently misrepresented facts to him and conspired together to coerce him to close, and then conspired to hold his money so the IRS could get it. He acknowledges, however, that Hunt and Equity Title treated him fairly, treated him with respect, and did a good job. Richardson has also not related with any specificity any communications he has engaged in with New Century other than the fact he began receive bills for his mortgage payment.

With regard to Richardson's allegation that he did not receive various closure documents and that the HUD-1 was not accurate because he did not receive the $11,396, the plaintiff admits he signed the various truth-in-lending, loan application, and right of rescission documents. He further testified that he did not find any of the fees charged to be excessive. Richardson has not stated any misrepresentations made by any of the defendants other than they promised him a check and he did not receive a check.

Equity Title's position is that Richardson's own misrepresentations caused him to suffer any harm that may have occurred to him. Had he not lied about his ability to take care of the tax lien, Equity Title would not have performed the closing in the first place. Even after Richardson's misrepresentation came to light, he could have salvaged the situation by rescinding, as Equity argues it urged him to do. Because Richardson insisted on proceeding with the closing

in light of the outstanding IRS lien, Equity was under a legal duty to pay off the lien to provide clear title to the lender.

The plaintiff response to Equity Title argues that it is liable for fraud because the HUD-1 statement's indication that the plaintiff was to receive the $11,396 in cash (while not mentioning the tax lien) was a false material representation that Equity Title and Hunt knew was false with the intent that Richardson should close the loan. As to conspiracy, the plaintiff argues that the defendants agreed with each other to perpetuate the fraud of paying the IRS with the money meant for Richardson.

The plaintiff argues that Equity Title as the settlement agent was in a fiduciary relationship with New Century and Richardson, while not discussing how Equity Title had effective control over Richardson or New Century.

As to Equity Title's alleged breach of the implied warranty of good faith and fair dealing, the plaintiff avers that the simple act of not including the tax lien on the HUD-1 statement constituted bad faith and unfair dealing.

With regard to the alleged violations of RESPA by Equity Title, the plaintiff merely restates its Complaint that Equity Title failed to give a good faith estimate of the amount or range of settlement charges at closing by failing to provide a settlement statement which conspicuously and clearly itemized all charges imposed on the borrower in connection with the settlement.

## D. Barry Hunt

The plaintiff concedes that Hunt is not liable under neither the TILA nor RESPA. This leaves claims of fraud, conspiracy, breach of fiduciary duty, breach of the implied warranty of good faith and fair dealing, and violations of the Mississippi Consumer Mortgage Protection Act

and the Mississippi Consumer Loan Broker Act.

With respect to conspiracy and fraud, the plaintiff admitted in his deposition that he had no knowledge of any conversations or communications between Equity Title and Hunt or between any of the defendants. Nor does he have any documentation evidencing an agreement between the defendants to defraud the plaintiff. Without an agreement, Hunt argues, there can be no conspiracy. Hunt argues further that there was no illegal act or legal act committed in an illegal manner because Richardson knew at all relevant times of the IRS lien. Though he denies the lien was mentioned at the closing table, he admits being aware there were problems arising from the lien during the critical three-day rescission period. Pamela White testified that she had discussions with Richardson during that period about the lien. Richardson's only allegation of misrepresentation centers around his essential argument that he wanted to receive cash out of his equity. It was unreasonable, argues Hunt, for Richardson to think he could do this without paying the IRS lien.

Hunt argues that the claim that he breached a fiduciary duty to the plaintiff is without merit because the plaintiff has never established the existence of a fiduciary duty owed to him by Hunt. Hunt states that Richardson admitted in his deposition that he understood Hunt worked for himself and was not a representative of New Century.

## II. DISCUSSION

### A. Summary Judgment

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the

evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 3l7, 323 (l986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (l986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, *supra*, at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, *supra*, at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l03l (5 Cir. l982); *Environmental Defense Fund v. Marsh*, 65l F.2d 983, 99l (5 Cir. l98l); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5 Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a

motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, *supra*, at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, *supra* at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id.*, at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id.*, at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978); *Schuchart & Associates v. Solo Serve Corp.*, 540 F.Supp. 928, 939 (WD Tex. 1982).

**B. New Century Mortgage**

1. Agency and vicarious liability

The threshold issue with regard to New Century the lender is whether Hunt the broker or Equity Title the escrow agent were agents of New Century, thus subjecting the latter to vicarious liability for the alleged actions or inactions of the broker or escrow agent or both.

Agency is "the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Butler v. Bunge Corp.*, 329 F.Supp. 47, 49 (N.D. Miss. 1971) (quoting Restatement (Second) of Agency § 14). Agency can either be express or de facto:

A de facto agency may be proven by the presence of three elements at the time of contracting: (1) "[m]anifestation by the alleged principal, either by words or conduct, that the alleged agent is employed as such by the principal," (2) "[t]he agent's acceptance of the agreement," and (3) "[t]he parties understood that the principal will control the undertaking."

*Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 870 (5th Cir. 2000) (citations omitted).

As discussed above, it is undisputed that the agreement between Hunt the broker and New Century the lender specifically disclaimed any agency relationship between them. The plaintiff has submitted no evidence that there was an express agency relationship between Hunt and New Century. Similarly, the record does not support a de facto agency relationship. The plaintiff has produced no evidence to establish a manifestation by New Century that Hunt was an employee of New Century. Indeed, the agreement between them specifically disclaimed an employment relationship. Furthermore, there is no evidence that Hunt and New Century understood that New Century controlled the undertaking as far as Hunt was concerned. In any event, it would be unusual to perceive a mortgage broker as an agent of a lender, especially one lender among many that he routinely solicits loans from on behalf of the broker's client.

The court concludes that the plaintiff has produced no evidence to establish that Hunt was an agent of New Century. Therefore, New Century cannot be held vicariously liable for any of Hunt's actions or inactions.

The next question is whether there was an agency relationship between New Century the lender and Equity Title the escrow agent. The plaintiff has produced no evidence that there was an express agency between the lender and escrow agent. It is undisputed that Equity Title services were solicited by Hunt the broker, that there was no exclusive relationship between Equity Title and the lender such that the lender could be said to employ or control the actions of

Equity Title. Thus, while it is unlikely that Equity Title as the escrow agent would be the sole agent of the lender, which contradicts the nature of an escrow agent, it is not beyond reason to think of an escrow agent as a dual agent: an agent of the mortgagor (Richardson) and mortgagee (New Century). That does not mean, however, that the plaintiff has established dual agency. But assuming *arguendo* that he could, it would avail him little given the Mississippi Supreme Court's ruling in *Lane*, 873 So.2d at 95-87 (Miss. 2004) which can fairly be read to mean that knowledge of a dual agent who is serving two principals is not automatically imputed to both principals without proof of actual knowledge by both principals.

Since the plaintiff admits in his response that "New Century was never told of the existence of the tax lien," the plaintiff cannot impute the knowledge of Equity Title regarding the tax lien to New Century. Response, 3. This means that New Century cannot be held vicariously liable for any of the wrongful acts allegedly committed by Equity Title since all of those alleged wrongful acts depend upon and relate to the payment of the tax lien.

Accordingly, all of the plaintiff's claims against New Century must fail even after viewing the facts in a light most favorable to him since the record does not establish that New Century possessed any knowledge regarding the existence and payment of the tax lien – the lynchpin of the plaintiff's case. As to the plaintiff's secondary argument that New Century as the lender is liable under the TILA for the allegedly excessive $1700 fee Hunt the broker charged Richardson in the name of Unicorp Marketing (in payment for settling the $19,000 tax lien with the IRS for $11,396), there is likewise no evidence that New Century possessed any knowledge of this until they received the closing documents which were signed and agreed to by Richardson by that point.

## C. Equity Title and Hunt

After concession in his response, the remaining claims against Equity Title the escrow agent are fraud, conspiracy to commit fraud, breach of fiduciary duty, breach of the implied warranty of good faith and fair dealing, and violations of RESPA. The remaining claims against Hunt are fraud, conspiracy, breach of fiduciary duty, breach of the implied warranty of good faith and fair dealing, and violations of the Mississippi Consumer Mortgage Protection Act and the Mississippi Consumer Loan Broker Act.

### 1. Fraud and conspiracy

To establish fraud, the plaintiff must prove "by *clear and convincing evidence*: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or its ignorance of its truth; (5) his intent that it should be relied upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Levens v. Campbell*, 733 So.2d 753, 761-62 (Miss. 1999) (emphasis added).

According to Richardson, the representation was that he would receive a check for $11,396 after the three-day rescission period following the closing of his loan. Richardson avers the representation was false since the $11,396 was used to settle the $19,000 IRS tax lien on his property. He argues that representation was material because had he not been able to receive the $11,396, he would not have gone through with the loan since his primary motivation in refinancing his mortgage was to get extra money to pay his mortgage payments while he was injured and not working. The argument continues that Equity Title the escrow agent and Hunt the broker knew the representation was false because they knew they would be paying the $11,396 to

the IRS instead of giving the money to Richardson. Equity Title and Hunt intended that the representation be relied upon by Richardson. The plaintiff also avers that he did not know of the falsity of the representation – *i.e.*, he did not know the money would be used to pay the IRS – and that he relied upon the truth of the representation that he would receive the money.

Viewing the facts most favorable to Richard, the establishment of the first seven fraud elements is reasonably possible. The problem, however, comes in meeting the last two. Did Richardson have a right to rely on the representation that he would receive the $11,396 himself without using it to satisfy the tax lien? Further, did satisfaction of the $19, 000 tax lien using the $11, 396 create consequent and proximate injury to the plaintiff?

A sober review of the record in this case, even viewed in a light most favorable to the plaintiff, manifestly establishes that the answer to both questions is no. Richardson admits that he knew at all relevant time that he owed the IRS $19,000 on the property he was seeking to refinance. He knew that it would be necessary to deal with that tax lien before he could get the loan. Even if he believed Hunt would "handle" the lien, he had to know that handling it would require some fraction of the $19,000 owed. Given his apparent dearth of funds, the court fails to see what money he planned to use to satisfy the tax lien. Essentially, the plaintiff did not have a right to believe that he could get the surplus of the new loan without paying the tax lien since such a belief is patently unreasonable. Furthermore, the record does not support the final element of fraud since Richardson received the benefit of the $11,396 by satisfaction of the IRS lien which was the prerequisite to receiving the loan. It is true that the entire point of refinancing was to get extra money, but given the known IRS tax lien, he should have either borrowed more money or exercised his right or rescission.

The court concludes that the plaintiff has not presented sufficient, much less clear and convincing evidence, to establish fraud on the part of Equity Title and Hunt. Since fraud is the unlawful act Richardson argues these defendants conspired to commit, the conspiracy claim necessarily fails also.

## 2. Breach of fiduciary duty

Next is the plaintiff's claim against Equity Title and Hunt for breach of fiduciary duty. Basically, the plaintiff argues that because they had a fiduciary duty to the plaintiff to disburse the loan proceeds according to the HUD-1 statement, the defendants breached that duty by paying the IRS the $11, 396 rather than paying it to Richardson. Equity Title and Hunt not only deny the breach, they also deny the existence of a fiduciary duty.

"The existence of a fiduciary duty must be established before a breach of that duty can arise." *Merchants & Planters Bank of Raymond v. Williamson*, 691 So.2d 398, 403 (Miss. 1997). One may form a fiduciary relationship "in a legal context where there emerges 'on the one side an overmastering influence or, in the other, weakness, dependence, or trust, justifiably reposed." *Id.* To ascertain whether a fiduciary relationship exists in a loan transaction, the court considers the following factors: "(1) the parties have 'shared goals' in the other's commercial activity; (2) one party justifiably places trust or confidence in the integrity and fidelity of the other; and (3) the trusted party has effective control over the party." *Smith v. Franklin Custodian Funds, Inc.*, 726 So.2d 144, 151 (Miss. 1998). The plaintiff who asserts a fiduciary relationship "has the burden of proving the existence of such a relationship by clear and convincing evidence." *Id*. at 150.

Stated differently, the Mississippi Supreme court wrote:

> Whenever there is a relation between two people in which one person
> is in a position to exercise a dominant influence upon the other because
> of the latter's dependency upon the former, arising either from weakness
> of mind or body, or through trust, the law does not hesitate to characterize
> such relationship as fiduciary in character. ... Although every contractual
> agreement does not give rise to a fiduciary relationship, such relationship
> may exist under the following circumstances: (1) the activities of the
> parties go beyond their operating on their own behalf, and the activities
> for the benefit of both; (2) where the parties have a common interest and
> profit from the activities of the other; (3) where the parties repose trust in
> one another; and (4) where one party has dominion or control over the other.

*Hopewell Enterprises, Inc. v. Trustmark National Bank*, 680 So.2d 812, 816 (Miss. 1996).

One important theme that is associated with a fiduciary relationship is dominion or control. While Richardson argues that Equity Title as escrow agent and Hunt as Richardson's mortgage broker were in a fiduciary relationship, he neither offers evidence nor discusses how either Hunt or Equity Title exercised control or dominion over him.

The court concludes that there is no evidence to create a genuine issue of material fact as to whether there was a fiduciary relationship between the plaintiff and Equity Title and/or Hunt. Thus, the plaintiff's claim of the breach of fiduciary duty against both cannot withstand summary judgment.

3. Breach of the implied warranty of good faith and fair dealing

According to the plaintiff's pleadings and briefs, the plaintiff argues that the simple act of not including the tax lien on the HUD-1 statement constituted bad faith and unfair dealing on the part of Equity Title and Hunt since the $11,396 surplus was ultimately used to satisfy the lien rather than given to the plaintiff.

The implied warranty of good faith and fair dealing exists in all contracts. "The breach of good faith is bad faith characterized by some conduct which violates standards of decency,

fairness, or reasonableness. Bad faith, in turn, requires a showing of more than bad judgment or negligence; rather 'bad faith' implies some conscious wrongdoing 'because of dishonest purpose or moral obliquity.'" *Harris v. Mississippi Valley State University*, 873 So.2d 970, 987 (Miss. 2004).

The court concludes that the plaintiff has produced no evidence to warrant a finding that either Equity Title or Hunt acted in bad faith constituting conscious wrongdoing in seeing to it that the IRS lien was paid in order to consummate the loan. Furthermore, there was nothing unfair about the situation given that the plaintiff knew all along that the IRS had to be paid.

4. Real Estate Settlement Procedures Act

The plaintiff admits that his claim of RESPA violations only apply to Equity Title the escrow agent. Plaintiff argues that Equity Title violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* and Regulation "X" implementing RESPA, 24 C.F.R. § 3500 *et seq.* by failing to provide the plaintiff a good faith estimate of the amount or range of settlement charges at closing, failing to provide a settlement statement that conspicuously and clearly itemized all charges imposed on the borrower, and charging excessive fees. This claim has never been developed with specificity.

As pointed out by New Century in their brief, the gist of the plaintiff's RESPA argument is that funds should not have been diverted from his closing to pay his IRS lien and that Hunt should not have charged him for negotiating the subordination agreement with the IRS. However, the plaintiff was aware of the IRS lien and he signed the HUD-1 statement which approved of the $1700 fee to Unicorp Marketing.

The court concludes that the plaintiff has provided no evidence creating a genuine issue

of material fact that the HUD-1 statement was not a good faith estimate. This is especially true given that Richardson, Hunt, and Equity Title knew the IRS lien had to be paid. Furthermore, other than not specifically mentioning the tax lien on the HUD-1, the plaintiff has not shown any evidence that Equity Title failed to provide a settlement statement that conspicuously and clearly itemized all charges imposed on him. Finally, the plaintiff has produced no evidence that Equity Title charged him excessive fees.

5. Violations of the Mississippi Consumer Mortgage Protection Act and the Mississippi Consumer Loan Broker Act

Regarding the alleged violation of the Mississippi Consumer Loan Broker Act by charging excessive fees, and violation of the Mississippi Mortgage Consumer Protection Act (which the plaintiff concedes are applicable only to the broker) , Hunt argues that Mississippi Code Annotated § 81-19-7 provides that mortgage companies required to be licensed in Mississippi under the Mississippi Mortgage Consumer Protection Act are exempt from the Mississippi Consumer Loan Broker Act. Hunt, doing business as United Mortgage DeSoto, argues that he falls within the definition of "mortgage company" and therefore the Mississippi Consumer Loan Broker Act does not apply to him. Hunt also argues that the provision for a civil cause of action in the Mississippi Consumer Loan Broker Act underscores the absence of a civil liability provision in the Mississippi Mortgage Consumer Protection Act , thus leaving no private cause of action for an alleged violation of the Mississippi Mortgage Consumer Protection Act. The plaintiff does not address these arguments in his response.

Since the plaintiff appears to have abandoned these claims, and because Hunt's defense to

them appear correct, the court concludes that summary judgment should be granted with respect to them.

### III. CONCLUSION

For the reasons discussed above, the court concludes that the motions for summary judgment filed by each of the three defendants should be granted and that the plaintiff's claims should be dismissed with prejudice for failure to provide sufficient evidence to create a genuine issue of material fact necessitating a trial. Accordingly, and Order shall issue forthwith,

**THIS DAY** of July 1, 2005.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE